## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 22 2021, 8:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Myriam Serrano-Colon
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerald J. Roberts,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 22, 2021

Court of Appeals Case No.
20A-CR-1478

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-2004-F3-10

**Bradford, Chief Judge.**

# Case Summary

[1] After pleading guilty to Level 5 felony domestic battery with a deadly weapon and Class A misdemeanor invasion of privacy, Jerald Roberts was sentenced to an aggregate five-year term. In sentencing Roberts, the trial court ordered that two years be executed in the Department of Correction ("DOC") and the remaining three years be suspended to probation. Roberts challenges his sentence on appeal, arguing that his five-year sentence is inappropriate. We affirm.

# Facts and Procedural History

[2] On April 10, 2020, Roberts became upset because his wife "wanted to leave the [family's] home" but he "didn't want her to leave." Tr. Vol. II p. 21. In an attempt to keep his wife from leaving the home, Roberts struck her "with the butt end of [a] machete." Tr. Vol. II p. 21. As a result of Roberts's actions, on April 15, 2020, the State charged Roberts with Level 3 felony criminal confinement, Level 5 felony domestic battery by means of a deadly weapon, and two counts of Level 5 felony intimidation. During an initial hearing on these charges, Roberts was instructed that he was to have no contact with his wife. However, despite being aware that he was not to contact his wife, Roberts subsequently contacted her via telephone from the jail. After Roberts contacted his wife, on June 22, 2020, the State amended the charging information to include a charge of Class A misdemeanor invasion of privacy.

[3] On June 23, 2020, Roberts pled guilty to Level 3 felony domestic battery by means of a deadly weapon and Class A misdemeanor invasion of property. In exchange for Roberts's guilty plea, the State agreed to dismiss the remaining charges. On July 31, 2020, the trial court accepted Roberts's guilty plea and sentenced him to an aggregate five-year sentence. In imposing this sentence, the trial court ordered that two years be executed in the DOC and the remaining three years suspended to probation.[1]

## Discussion and Decision

[4] Roberts contends that his aggregate five-year sentence is inappropriate. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotation omitted). The defendant bears the burden of

---

[1] The trial court ordered that the first year of probation "be on Community Corrections as a condition of Probation." Tr. Vol. II p. 48.

persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[5] The trial court sentenced Roberts to a four-year term for his Level 5 felony domestic battery conviction and a one-year term for his Class A misdemeanor invasion of privacy conviction. The trial court ordered that the sentences run consecutively. Indiana Code section 35-50-2-6 provides that "[a] person who commits a Level 5 felony … shall be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Indiana Code section 35-50-3-2 provides that "[a] person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year." Thus, while the trial court imposed a slightly-aggravated sentence in sentencing Roberts, the trial court ordered that only two of those years be served in the DOC with the remaining three years suspended to probation.

[6] In challenging the appropriateness of his sentence, Roberts argues that neither of his offenses were "more egregious than the 'typical' offense of that kind." Appellant's Br. p. 8. We cannot agree. As for the Level 5 felony domestic battery conviction, Roberts struck his wife "with the butt end of [a] machete" because he "didn't want her to leave" their home. Tr. Vol. II p. 21. As the State points out, Roberts admitted to attempting to kill his wife, stating that at the time of the attack on his wife, "he was on methamphetamine and had not slept in about two weeks." Ex. Vol. p. 6. As for the Class A misdemeanor

invasion of privacy conviction, Roberts continued to contact his wife via telephone from jail despite being aware that he had been ordered not to do so.[2]

[7] As for his character, we reiterate that Roberts admitted that he attempted to kill his wife with a machete. He then knowingly violated a court order by contacting her via telephone. We agree with the State that Roberts's apparent disregard for his wife's well-being and court orders does not reflect well on his character.[3]

[8] Roberts argues that his lack of a significant criminal history reflects well on his character. The record reflects that in 2000, Roberts was charged with Class A misdemeanor possession of "Marijuana/Hash Oil/Hashish/Salvia/Synthetic Cannabinoid" but the trial court agreed to withhold prosecution if Roberts paid certain fines and costs, served ten days on the road crew, and completed a drug-treatment program. Appellant's App. Vol. II p. 74. In 2019, Roberts was convicted of Class A misdemeanor cemetery mischief and was placed on probation, the conditions of which he is alleged to have violated on three separate occasions. Also in 2019, Roberts was charged with Class A misdemeanor theft. The theft case was pending, and Roberts had been released from pre-trial incarceration on bond, at the time he committed the underlying

---

[2] Roberts indicated that despite the fact that a "no contact order remains in place," he and his wife are maintaining "regular contact" during his incarceration. Ex. Vol. p. 9.

[3] We do not believe that the fact that Roberts's wife has requested that Roberts receive leniency reflects positively on Roberts's character given that he admitted to attempting to kill her.

domestic battery.[4] The State subsequently sought to revoke Roberts's bond. While Roberts's criminal history may be classified as relatively minor, it is worth noting that he has committed various criminal acts resulting in three separate criminal cases being filed against him since 2019. In addition, the record reflects that Roberts has failed to reform his behavior despite various opportunities to do so and has repeatedly demonstrated both a disregard for and inability to abide by the laws of this state.

Roberts also argues that it reflects well on his character that he "accepted responsibility, pleaded guilty, and showed remorse for his conduct." Appellant's Br. p. 13. While remorse and acceptance of responsibility may generally reflect well on one's character, we note that in this case, Roberts received a substantial benefit from his plea as three charges, including one Level 3 felony and two Level 5 felonies, were dismissed as a result of his plea agreement.

Roberts also points to his mental health issues. The record reflects that Roberts was aware that he was suffering from mental health issues at the time of his attack on his wife but was not taking any steps to address these issues. Roberts admitted prior to sentencing "that his wife has been trying to convince him to quit drugs and get mental treatment for years, but he has never been committed to it." Ex. Vol. p. 9. In addition, the trial court took Roberts's mental illness

---

[4] Roberts pled guilty to this offense in the same plea agreement in which he pled guilty to the underlying domestic battery and invasion of privacy charges.

into consideration and crafted a sentence that would provide Roberts the opportunity to receive treatment for his mental-health issues.

[11] In sentencing Roberts, the trial court considered various factors relating to Roberts's character, including his mental-health issues, and issued the following sentencing statement:

> It was alarming to me quite honestly to read that statement … where he referred to trying to kill his wife. It's very alarming. And that's his own words.… So, that's very, very alarming.… Let me first start by saying I do believe that there's a serious mental health issue here.… And perhaps he has been decreasing for, destabilizing for the last, last two years. That's unfortunate. So, I do think that the mental health issue here is, is an important element to consider as a mitigator, including the P.T.S.D. finding and that he's obviously deteriorated the last couple of years. And, it appears to me that, that was probably taken into consideration and perhaps even the victim[']s wishes were taken consideration in pleading this down from the more serious Level 3 Felony down to the Level 5. So, I think I have to balance how much more consideration do I give that in the, given the fact that he, it appears he received a substantial benefit already for this being pled down … to the Level 5. So, that goes into my considerations somewhat. But, as I said, I think the, the strongest most substantial mitigator here is the mental health. And I always like to give strong consideration to … serious mental health issues. Those issues need to be addressed appropriately so that they can learn how to function in society and not be a danger to the community. Another mitigator is … that he did pled guilty and he accepted responsibility for his crimes. But again, that's diminished I think somewhat by the fact that he received the benefit of the plea agreement. The mental health issue also I am going to diminish it somewhat by the fact that he was clearly aware that he was having these problems and really didn't do anything to go address it even after

the wife was pleading with him.… So, he was aware of the problem and he neglected to go get the treatment when he could have and when he had the support to do so. He has substance abuse issues.… [I]t seems pretty clear in reading these reports that he was self-medicating after some point. He started taking the meth to deal with these mental health issues and some other things. So, I think he was aware of some of these issues that he had and he, he was aware that there was an ability to treat it in a different way th[a]n what he did. But he allowed this to escalate to get way out of hand, way out of hand. Another mitigator is that there was a substantial period of law-abiding life.… [U]p until at least the time of the, these other offenses that were committed in [2019], he was leading, leading a fairly law-abiding life [and] … [t]here was a substantial period of no criminal history. And he does have strong family support. I know that the victim is here today and she is asking for leniency.… But what I want to say and acknowledge is, that this Court I think always takes an attempt to acknowledge mental health issues and substance abuse issues. And it doesn't always throw people in jail for committing crimes if they have an underlying issue. But sir you crossed the line. You crossed the line when you committed this kind of an offense with a deadly weapon and the manner in which you did it.… So, when I see crimes like this involving deadly weapons, it just crosses the line sir, and, and, and I just can't ignore it and just can't give you time served and let you go out and get treatment. There has to be some kind of balance with rehabilitation but also punishment given the seriousness and the nature of the crime.

Tr. Vol. II pp. 43–46.

[12]    The trial court's sentencing statement makes it clear that in sentencing Roberts to an aggregate five-year term, with two years in the DOC followed by three years of supervised probation, the court was attempting to strike a balance

between the serious nature of Roberts's crimes and his need for mental health treatment. We agree with the trial court that Roberts "crossed the line" when he struck his wife with a machete. Tr. Vol. II p. 46. Roberts has failed to convince us that his aggregate five-year sentence is inappropriate. *See Sanchez*, 891 N.E.2d at 176 ("The defendant bears the burden of persuading us that his sentence is inappropriate.").

[13] The judgment of the trial court is affirmed.

Kirsch, J., and May, J., concur.